Good morning. May it please the Court, my name is Betsy Stevens, for the plaintiff Mr. Marlin Nelson, and as you can see this is a social security disability case, and the primary issue is that there's a large exhibit of evidence, about 200 pages worth of medical evidence, exhibit 14F, that it appears that the ALJ never got to see. And this is important because this exhibit contains about 10 years of history of this, of Mr. Nelson's back impairment. Did it include the May 5th, 1988 records from the neurosurgeon? Yes, Your Honor. Thank you. And the primary reason that the ALJ in this case found that Mr. Nelson was not credible was because the ALJ was under the impression that there was very little objective medical evidence of the back impairment. The ALJ only, only saw, I believe, the 2008 x-ray. And so he didn't understand why this, why Mr. Nelson was in so much pain. And so he didn't see it at all? He didn't reference it at all? Well, I can't 100% conclusively prove whether or not he saw it, but it was submitted after the hearing, and he never mentions it in the decision. And when you read the decision, it appears. So I guess that's why I'm asking. Is there a case that says that an ALJ must specifically reference predisability evidence in a determination? Because you agree this is all predisability evidence? Yes, Your Honor. So I'm looking for authority, and I don't know if it's out there. I didn't find it, but I'm trying to see if you have any case that says it requires the ALJ to reference, because the inference is out there that he may have looked at it. We don't know, I guess, conclusively, but we don't know that he didn't. And so I'm just trying to figure out, is there error in that he didn't specifically refer to it? Well, I'm trying to find the specific place where we have it. The ALJ needs to address probative evidence. And the reason that, even though this is old evidence, the reason why the ALJ should have addressed it is because this is a progressive impairment. And it's not something that occurred on a traumatic basis in 2004 and all of a sudden he was disabled. It's something that's degenerative disc disease that developed over time. That's true. It seems like that may be true for most disability folks. It's not a traumatic incident. It's oftentimes, at least from what I've seen, back is getting worse or legs getting worse or different things happening. I'm just trying to figure out, because you put a lot of emphasis on this, I want to make sure it's fairly, your assertion is fairly considered, and I'm just trying to see what authority there is. Well, in the Lester case, the ALJ has to provide clear and convincing reasons for rejecting a treating or examining physician's opinion. And these are, even though they're before the alleged onset of disability, they relate to the claimant's condition during the relevant period. Counsel, could I ask a question about, there's a July 17, 1991 entry, I believe I've got that date right, where Dr. Berkley, a neurosurgeon, was recommending surgery. And then there's a big gap in medical, at least the medical records that we have available. There's a recommendation for surgery, as I read the record, and then nothing for many, many years. Do we have any explanation for that? I'm not really sure why, Your Honor. It could be that he couldn't afford medical care. It could be that, I think he testified that the doctor told him that surgery might make his condition worse, and he might have been afraid to go through with it for that reason. I'm really not sure why. Well, it just kind of, I think, follows up on Judge Murguia's question about this, or perhaps it was your comment about this being a progressive injury. And certainly degenerative disc disease, I think, is what we typically see, is it's argued that that's a progressive. People typically remind us that we're suffering from the same thing at one degree or another at our age. But setting aside that, it seems to me that your client's medical record also had, you know, an acute injury. And so it strikes me as a little bit odd that we have this recommendation for surgery based on an MRI, and then many years without treatment. And really, then, there are more recent films, I think, MRIs, but certainly X-rays, where the medical opinion was that surgery was not needed. And I'd like you to have an opportunity to respond. Well, I'm not sure why he never had the surgery in 1991. And he did go back to work for a period of time in between the time when surgery was first recommended and the time, the later records that we have, beginning in, I think, 2004. I'm not sure why. I think he tried to go back to work. He did work, and it's something that just got worse over time. And eventually the pain got too bad for him to continue. And maybe he thought he could, and it turned out he was wrong. I don't really know why there's such a large gap. What relief are you seeking today? Well, ideally, we would like a remand for payment of benefits based on the improper rejection of the claimant's testimony and the large stack of medical evidence that the ALJ did not address, and the improper rejection of the two lay witnesses. If we conclude that the testimony that you just referenced was properly discounted or that there was harmless error by not crediting it more heavily, are you asking for a remand to clarify whether 14F was considered? We would like for, at a minimum, for the ALJ to have an opportunity to consider that exhibit, because it looks as if he never got to see it. It was filed within the two-week period, right? Within the two-week extension where the record was held open? Yes, Your Honor. I believe so. All right. Forgive me. I think I've interrupted you, Judge McGill. No. I just thought that I'm trying to figure out on this pre-disability evidence on whether or not the ALJ, because it seems to be, like I said, the main thrust of your brief, and whether or not these medical opinions that predate the alleged onset of disability, how relevant they are. And I think it's Carmichael v. Commissioner of Social Security Administration indicates that medical opinions that predate the alleged onset of a disability are of limited relevance. Are you familiar with that case? Can you distinguish it? Well, I just think that in this case, it's a progressive impairment, and the later records show that it did get worse over time. And these earlier records, I mean, the reason that the ALJ gave for not crediting Mr. Nelson's testimony was primarily that the ALJ didn't think that he had had very much treatment before. And this shows that he did. This evidence shows that he did. And so this undermines the ALJ's primary reason for rejecting the testimony. And also, Your Honor, there's the MRI of August 13, 2009, that was submitted to the Appeals Council. And that shows extensive damage to the lumbar and cervical spine that the ALJ also did not know about. And the examining doctor, excuse me, Dr. VanderWaal, who the ALJ relied on in forming his residual functional capacity finding, he also did not have the MRI. He only had an X-ray to go by. And the X-rays show the vertebrae, but they don't show the soft tissues, the nerves and the discs. And that's what the MRI revealed later on. Well, Dr. Wahl, in 2007, understood that he didn't know about the earlier MRI and recommendation for surgery, I think. Is that right? I don't think that he did, Your Honor. He didn't reference it anyway. He seemed to also believe that there had not been much prior treatment. But why, if all of this evidence was so important, why wasn't it discussed and submitted prior to the hearing so that there could be a full hearing? It seems a little questionable. One of the reasons we like to have all of this aired below is to give the ALJ a fair opportunity to review it. It looks like the ALJ here kept the record open for any additional evidence that might support. And then here comes all this pre-disability evidence at that point in time. Your Honor, I don't know if they had trouble getting it from the doctors or why there was a delay. But is there any mention of it? I'm sorry for interrupting. Is there any mention of it? And if so, any emphasis on it during the hearing or pre-hearing? I don't know that it was specifically referenced. He did, Mr. Nelson did tell the ALJ that his back started hurting in the 1980s, and then he had prior treatment. He's aware of the prior treatment. Well, he was aware that his back hurt in the 1980s. I don't know that the judge knew the extent of the treatment. He thought that there had been a pain. Your client knew. Right. And I'm not sure why those records got submitted after the hearing instead of before. I don't know. Sometimes they have trouble getting them from the physicians. And it just takes a while, which is why, I guess, why the ALJ left the record open after the hearing. Well, you guess. I mean, we don't know. I mean, it seems like he was doing that just to be fair to him. It seems so. But then, I mean, the records were submitted before the record was closed. And I'm not sure why the judge didn't mention any of them. Counsel, is there any dispute that Mr. Nelson can work as an electronics worker or as an assembler of small products? One of those jobs, I think it was the electronics, the judge called it electronics assembly in the decision, which is that's a semi-skilled job, and that's a different job from electronics worker. And it's not the one I'm asking about. I'm asking about the one that the voc rehab expert actually testified to. And I think it's pretty clear that the ALJ made a mistake in his findings. And you dispute that the more skilled position is one that your client could have performed. But my question is, is there any dispute that he could have performed the one that the voc rehab expert actually testified to? Well, the dispute there is that the vocational rehab expert didn't have all of his limitations to consider. When the expert testified that he could perform those jobs, there was no consideration of the fact that he can't sustain a full work day and that he can't be up and active for more than about two hours total in a normal day, sitting, standing or walking. And is it your argument that he cannot do those things because of his back or because of his depression or because of his substance abuse? Well, it's the combination of all of those factors, but primarily because of his back. And unless you all have further questions, I'll reserve the rest of my time. You're talking about the failure to consider the remarks of Tony Kertesser? Yes, Your Honor. That wasn't considered at all. Yes, Your Honor. The ALJ did not mention that witness at all. But the ALJ did conclude that Mr. Nelson suffered from the severe impairments that her testimony went to, hence my earlier comment about was that harmless error? It wasn't harmless error because that witness noted a couple of things that the claimant himself never mentioned to the judge, such as she said that Mr. Nelson's hands changed color in the cold and that could be related to his neck impairment and that he drops objects, and those are things in addition to Mr. Nelson's own testimony that the ALJ should have considered. Well, she says I've seen his hands change color when he was cold and not and hot. I have seen him in bad pain where he couldn't eat, sleep, concentrate, or communicate. I've seen the depression over his loss so bad that I worried and wouldn't leave his side. He no longer can do his hobbies. He enjoys or do a lot of things needed to have a normal life. And none of that was considered. That's right, Your Honor. How about the availability of jobs in the local and national economies? Well, Your Honor, the vocational expert said that these two jobs, the small product assembly and the electronics worker, would be available in significant numbers. But the vocational expert didn't get to consider all of Mr. Nelson's limitations when he testified to that. And it's our position that if he had known all of these limitations, if the ALJ had included all of those things in the hypothetical, then there would have been no jobs available for him to perform. Well, what was missing from the hypothetical? Well, Mr. Nelson's testimony that he can't sit, stand, or walk for more than about 20 minutes at a stretch, and that he can be up and active for about two hours a day total, and that he's unable to sustain activity over the course of an eight-hour workday, in addition to the things that the lay witness mentioned. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is David Burdett, representing the Defendant, the Commissioner of Social Security. A number of points were raised here, and I want to try and take them all in order. First of all, I would like to thank the Defendant for his testimony. To begin with, and I think this is very significant, the old evidence, the evidence that was submitted post-hearing, dating from 1982 to 1991, on this disability claim where Plaintiff asserts that he became disabled in the year 2004. Well, of course, as Judge McGeer indicated, the Carmichael case limits the import of pre-disability medical documents, but even before that, we have the principle from Vincent V. Heckler in 1984 that only probative evidence need be addressed by the ALJ. This was not probative evidence. Well, why isn't it probative evidence to the extent that the ALJ seems to be opposing counsel's position, is that the ALJ relied on Dr. Wall quite heavily. That's a 2007 report, and Dr. Wall didn't know about this. It's sort of, in other words, almost impeachment going to the foundation, the basis for Dr. Wall's opinion. It isn't probative evidence, Your Honor, because it introduces this evidence and Dr. — I forget the doctor's name from 1991, so I guess perhaps surgery is indicated. Berkeley. Yes, correct. And then Mr. Nelson goes on to work for 12 years in extremely heavy jobs after that, first as a woodcutter. Well, that means it would be of limited probative value, but it doesn't mean, if we're talking about evidence, I don't buy that it's not probative. You're just saying that you don't think it would be very persuasive because he was able to continue working after the recommendation to have surgery? That's right, Your Honor. And respectfully, I just don't think it's worth anything at all, because when you have a — I mean, we may disagree on that, and that's fine, but I just don't think it's worth anything at all when the theory is that because of a degenerative back problem that is so bad that he may need surgery in 1991, he is later disabled in the year 2004, and in the interim he works for six years chopping and selling wood, and then turns and becomes a welder for five years. Welder. And his testimony was, I scheduled manufacturing, I supervised up to six people in the shop, I welded large parts, and I lifted 50 to 100-pound pieces of metal. I don't dispute that. No. That is not probative at all. I'm trying to get you to focus on the legal argument you're making in response to Judge Merguia's question about the Carmichael case. Yes, Your Honor. And what I'm interested in is whether it's really correct that this evidence would not have been able to be really considered by the ALJ. We can agree or perhaps disagree about how much weight should have been given to it, but if you could just satisfy my curiosity about this legal point, that would help  You don't buy it, counsel. But the question is, was the ALJ really prohibited from considering it? Was he prohibited from considering it? Under the Carmichael case. No, he was not. No. Thank you. Carmichael says it's just of limited relevance. It doesn't preclude consideration. No, Your Honor, and I'm not trying to say that he couldn't have considered it. No, there's no such rule. Thank you. Okay. Do you think it's totally irrelevant? Honestly, I think it is, Your Honor. I think it is. When you have a man doing the kind of work that Mr. Nelson was doing for 12 years thereafter, and only a search disability in the year 2004, I do think it is irrelevant. Well, it is a progressive disease, right? Well, it is, Your Honor. It is a progressive disease. And when you're young, you can do a lot of things with your body that are little by little going to tear it down. We'll find that out. I mean, I've had a back problem since I was in high school. And I've still got it. It gets worse. I had it during the war where I remember one time I wondered if I could get up in the morning and carry on. But I did. And when you're young and you're strong and you're resilient, you can do a lot of things with your body. But it starts to wear down over time. And this is a progressive disease. I mean, what does the AOJ say when it starts out? Let's see. Let me try to find his report here. Findings of fact and conclusions of law. It's on page 15 of that report. Claiming it has severe impairments of residual degenerative joint disease of the right ankle, degenerative disc disease, depressive disorder, learning disorder, polysubstance, marijuana abuse. And so these impairments are recognized. Yes, Your Honor. That's correct. And he says, I find his impairments of residual degenerative joint disease of the right ankle and degenerative disc disease are severe. Yes. He does that too, doesn't he? And so, and then, I mean, he meets all the requirements except one, that he can still carry on simple, routine-type work. Nothing complex. That's it, Your Honor. And I don't. That's where he gets, he gets, they push the button and he goes down the tubes because he can do simple, routine-type work, nothing complex. So how many jobs are there out there in this economy? Well, there are with. In the real world. In the real world. Yes. Well, there are some jobs. According to the VE, as Judge Christen indicated, there is the job of the electronics worker. And it is the job of the electronics worker, not electronics assembler. That was a flub in the typing. But pretty clearly from the discussion, it was electronics worker. Why was that a flub? Well, because the ALJ talked to the VE and he listed two jobs, small parts assembler and electronics worker. And the ALJ in typing the decision or the decision writer in typing the decision typed small products assembler and electronics assembler rather than electronics worker, which are two different titles. And then much was made of that in plaintiff's brief because they said, oh, well, electronics assembler is a semi-skilled job and he can't do that, which we would concede, but electronics worker is an unskilled job, so there's no need for transferable skills. What does an electronics worker do? Sits at the bench and works on circuit boards. Circuit boards? Yeah. How's that? I'm trying to visualize. Put circuit boards together. Well, Your Honor, we've now exhausted my knowledge about electronics workers. That would blow up. Yeah. Counsel, what's the best indication that the ALJ did consider 14F? We don't have any, Your Honor. Just the timing? Just the timing, that it was submitted during the – and it was submitted. It was submitted during the two weeks post-hearing, so that was fair. He kept it open. They submitted it timely. And then the decision was written after that. You know, candidly, I would have liked to have had some kind of remark, at least of the sort that I made, that this is not relevant for the following reasons. It's not probative, but I think that we can fairly assume that the ALJ considered all the evidence that was submitted before him. Could I ask a dumb question, just logistically? Does this stuff get submitted in paper and has to reach somebody's desk, or is it electronically filed where there would be an indication on a computer screen somewhere, a docket, if you will, that it had been received? It gets submitted in paper. It gets submitted in paper. We're trying to move everybody. Yeah, we are, too. It's taken a while. Toward the electronic record and the docket – or the submissions, and therefore containing their own index of authenticity, but it takes a while. Okay. Thank you. How old is he today? I beg your pardon, Your Honor? How old is this gentleman? Today he is 54, because he was born in 1958. At the time, in 2009, he was 50. And he was, at the time, he was working as a welder. He was working as a welder only up until he was 42. So to your point, it is certainly a progressive impairment, and, you know, we don't claim that he could have gone back to work as a welder after that time. The ALJ didn't make any such finding. And to your point, Judge Bregerson. Vocational experts that find jobs for people, they have a lot of imagination, haven't they? Well, Your Honor. I mean, so it's okay for him to put circuit boards together. You know, to me, that's a pretty responsible job. Well, Your Honor, I mean, we're constrained to rely upon the expertise of the VEs. I don't get to interrogate them myself. But Ms. Stevens does, if she represents the claimant at the hearing, and her associate, Mr. Wilborn, does. And if they stipulate to the qualifications of the vocational expert, then I assume they're fine with that. Counsel, can you show me in the record, I'm just reminding myself about the severe impairments that the ALJ found included the depressive disorder? Yes, they did, Your Honor. Okay. And so could you show me in the record where the hypothetical allowed for, incorporated the severe depressive disorder? I think the hypothetical is on page 46 of the record. Thank you. ER-46? Yes. 46. Thank you. Yes. I have to tell you this. One time, many, many years ago, when I was on the district court, I had a hearing on a claimant who couldn't stand to be around people, who didn't want to talk to anyone, wanted to work late at night, and had all kinds of limiting problems with his work. And so the vocational expert got on the stand and was asked, is there work that this person could find a job? And also this claimant had some really personality disorders, and it was pretty heavy. And so he was asked, is there work in the national and local economy for this person to find a job? And the expert said, yeah, there are lots of jobs for him. Well, for example, what kind of work could he do with all these traits? He doesn't want to be around people. He likes to work his night and goes on and on. And the expert's answer was, well, he can be a night watchman and a mortuary. Well, we will not try to send Mr. Nelson to be a night watchman, I promise you, in a mortuary. Your Honor, is there any more questions that I can answer for the Court? I like your sense of humor. Thank you, Your Honor. It's always a good idea to laugh at Judge Pregerson's joke. Your Honors, I would just like to say that even if you decide that the pre-disability evidence is not probative, there's still the MRI from August of 2009 that the Appeals Counsel had and did not address. And we believe that that undermines the ALJ's rationale and shows disability. What does that show again? The MRI? Yeah. It shows, I believe it shows a herniated disc in the lumbar spine. And pardon me, Your Honor, I'm looking it up. It shows both the cervical and lumbar spine have herniations and cord canal stenosis, remodeling of the cord, neural encroachment. Stenosis means narrowing. Yes, Your Honor. A herniated disc at L5, S1, touching the S1 nerve root and displacement of the right S1 nerve root. And that's at page 477 of the transcript. Counsel, did the hypothetical accommodate the ALJ's finding that this individual has severe depressive disorder? Well, I believe you limited the claim into simple work. I'm asking about the hypothetical question. I'm looking at page 45. Counsel, opposing counsel referred me to 4546. Okay. And I don't see it in the hypothetical at 45 of the record. So if it's somewhere, I guess maybe that's my first assumption, that it's just the one hypothetical question that was given? I believe so, Your Honor. Is that correct? Okay. I don't see reference here to the depressive disorder. The ALJ may not have mentioned it. It may not have been included. I'm not sure if he thought that he addressed it by limiting him to routine work. Sometimes that's what the ALJ. Well, there's a learning disorder here, so I wasn't surprised to see the restriction to simple work. Right. I'm looking specifically for the depressive disorder. If the ALJ did not, and if this hypothetical is inadequate, that's an assumption on my part, but as a hypothetical, for purposes of this question, what relief would you seek? Well, we would ask for a remand so that the judge could consider all of the claimant's impairments, including the depression. Thank you. This matter is submitted.
judges: Pregerson, Murguia, Christen